Matter of Lora PP. v Alphonso PP. (2023 NY Slip Op 06018)

Matter of Lora PP. v Alphonso PP.

2023 NY Slip Op 06018

Decided on November 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 22, 2023

CV-22-1953
[*1]In the Matter of Lora PP., Respondent,
v
Alphonso PP., Appellant. (And Four Other Related Proceedings.)

Calendar Date:October 17, 2023

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and Powers, JJ.

Cliff Gordon, Monticello, for appellant.
Jane M. Bloom, Monticello, for respondent.
Ivy M. Schildkraut, Rock Hill, attorney for child.

Garry, P.J.
Appeal from an order of the Family Court of Sullivan County (Mark M. Meddaugh, J.), entered August 18, 2022, which, among other things, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of the subject child (born in 2009). Pursuant to an April 2018 order, the parties shared joint legal and physical custody of the child, with the child spending approximately half of his week with each parent. That custodial arrangement was later modified, upon the parties' consent, to a week on/week off schedule. In November 2021, after the child refused to return to the father's custody, the father filed the first of several violation petitions against the mother. In response, the mother filed two custody modification petitions seeking sole custody of the child until such a time as the child felt comfortable returning to the father. Following a fact-finding hearing and a Lincoln hearing, Family Court granted the mother's petitions, awarding her sole legal and physical custody of the child.[FN1] The court granted the father therapeutic parenting time with the child and directed that such parenting time commence without unreasonable delay; the court further provided that the completion of six months of therapeutic visits would be deemed a change in circumstances permitting the father or the attorney for the child to seek modification of the order.[FN2] The father appeals.
It is undisputed that the breakdown in the child's relationship with the father and the child's refusal to see the father constituted a change in circumstances that warranted revisiting the parties' custodial arrangement (see Matter of Laura E. v John D., 216 AD3d 1274, 1274 [3d Dept 2023]; Matter of Payne v Montano, 166 AD3d 1342, 1344 [3d Dept 2018]; Matter of Gonzalez v Hunter, 137 AD3d 1339, 1341 [3d Dept 2016], lv dismissed & denied 27 NY3d 1061 [2016]). The father also does not dispute that, given the circumstances, primary physical custody of the child needed to be with the mother. He instead argues that the grant of only therapeutic visitation was unsupported by the record and urges that some other graduated parenting time schedule was required. The attorney for the child supports affirmance.
As with custody determinations, an award of parenting time is governed by the best interests of the child, and Family Court's broad discretion in developing a parenting time schedule will not be disturbed if supported by a sound and substantial basis in the record (see Matter of David V. v Roseline W., 217 AD3d 1112, 1114 [3d Dept 2023], lv denied 40 NY3d 905 [2023]; Matter of Paul Y. v Patricia Z., 190 AD3d 1038, 1042 [3d Dept 2021]; Matter of Jill Q. v James R., 185 AD3d 1106, 1108 [3d Dept 2020]). Although parenting time with a noncustodial parent is generally presumed to be in a child's best interests, a structured parenting time schedule is [*2]not required where it would be detrimental to the child's welfare (see Matter of Autumn B. v Jasmine A., ___ AD3d ___, ___, 2023 NY Slip Op 05293, *3 [3d Dept 2023]; Matter of Timothy D. v Becki C., 195 AD3d 1081, 1082 [3d Dept 2021]; see also Matter of Granger v Misercola, 21 NY3d 86, 91-92 [2013]).
The parties were the only witnesses to testify at the fact-finding hearing. Both acknowledged that the child had not spent any custodial time with the father since his refusal to return to the father in November 2021. The father testified that he had no idea why the child did not want to return to his custody. Although he admitted that he had struck the child with a belt in the past, he insisted that there had been no recent argument or altercation precipitating the child's actions. He never asked the child why he did not want to spend time with him, and, although he would sporadically text message the child, he testified that he made no other attempts to communicate with or see the child since November 2021. The mother stated that she made multiple efforts to encourage the child to visit and/or communicate with the father, although her attempts often caused the child marked frustration and anger. Apparently, the child did agree to speak with the father to explain why he was unwilling to spend time with him, sometime in March or April 2022. According to the mother, that phone conversation devolved into the father yelling and hanging up. The mother testified that such behavior on the part of the father was typical, and she described certain demeaning behavior that the father had directed at her and the child in the past. The parties agreed that the child, who was experiencing ongoing struggles with his mental health and academic performance, would benefit from counseling. The mother testified that the child was presently resistant to the idea of therapy, so she elected not to force his participation. The mother was, however, actively engaged with the child's school, and she had school counselors at the ready and a plan in place to address his grades. The father had not made any efforts to obtain services for the child; this is particularly notable given that the child is on the father's health insurance and the evidence that the father had repeatedly failed to provide the mother with pertinent insurance information.
The record established that the prospect of unsupervised custodial time with the father caused the child significant distress. Additionally, "[a]lthough not determinative, the wishes of the child are entitled to considerable weight, in light of [his] age" (Matter of Turner v Turner, 166 AD3d 1339, 1340 [3d Dept 2018]; see Matter of Chad KK. v Jennifer LL., 219 AD3d 1581, 1584 [3d Dept 2023]). We find that Family Court, mindful that the best interests of the child lie in a heathy relationship with both parents, "thoughtfully provided for a course of preparational therapy . . . in order to explore a path toward a meaningful relationship between[*3]" the child and the father (Matter of Timothy D. v Becki C., 195 AD3d at 1082).[FN3] We also reject any argument that the court delegated its authority to determine the frequency of parenting time to the child's therapist as the order set forth precise terms and duration (see Matter of Matthew E. v Laura E., 192 AD3d 1341, 1343 [3d Dept 2021]; Matter of Mackenzie V. v Patrice V., 74 AD3d 1406, 1407-1408 [3d Dept 2010]; compare Matter of Holland v Holland, 92 AD3d 1096, 1096-1097 [3d Dept 2012]; Matter of Fisk v Fisk, 274 AD2d 691, 692-693 [3d Dept 2000]). Thus, Family Court's parenting time schedule has a sound and substantial basis in the record, and, accordingly, it will not be disturbed.
Lynch, Reynolds Fitzgerald, Fisher and Powers, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Family Court also denied the father's violation petitions. The father does not pursue any challenge to those denials on appeal.

Footnote 2: There is no indication that any subsequent proceeding has been brought relative to the child.

Footnote 3: There is no indication that the father availed himself of the opportunity to engage in therapeutic parenting time. It thus appears that, rather than spending six months engaged in a supportive service that he agreed would benefit the child, the father elected to exclusively pursue this appeal, which will now be decided over a year later.